SUE GALBRAITH GEISSEL, Executrix of the Estate of DONALD BENNET GALBRAITH, Appellant, v. ROSEMARY E. GALBRAITH, TAM-O-CHELL, INC.; CONSTRUCTION CONSULTANTS & MANAGEMENT, INC.; ROBERT RISHLING; RAYMOND GREGOR; MARILYN GREGOR; FIRST AMERICAN TITLE COMPANY OF NEVADA; CONSOLIDATED MORTGAGE COMPANY; and NEVADA SAVINGS AND LOAN ASSOCIATION, Respondents.

No. 15568

March 4, 1985                                        695 P.2d 1316

---

*Gladstone and Stark,* Las Vegas, for Appellant.

*Brown, Wells, Beller & Kravitz,* Las Vegas, for Respondent Galbraith.

*Andras F. Babero,* Las Vegas, for Respondent Nevada Savings.

*Lionel, Sawyer & Collins* and *Dennis L. Kennedy,* Las Vegas, for remaining Respondents.

## OPINION

*Per Curiam:*

This is an appeal from an NRCP 41(b) dismissal of reformation action. Appellant Geissel is the executrix of the estate of her father, Donald Galbraith. In her amended complaint the executrix claims that a deed of trust and a promissory note drawn by respondent First American Title Company were prepared and took effect in a manner contrary to the intentions of the parties and should therefore be reformed.

The controversy arises out of the sale of certain real property owned by Donald Galbraith as separate property. The original escrow was prepared in such a manner as to be executed by Galbraith as "an unmarried man." Since Galbraith had married since his acquisition of the property, this designation was inaccurate; and he was requested by respondent First American Title Company to get a quitclaim from his wife or arrange to have her sign the deed.

Galbraith insisted to William R. Smith, an agent of the title company, that the property was his sole and separate property and that he was unhappy with the problem raised, as he saw it, by the

title company. Later he told Smith that it was all right to "have her come down and sign." New escrow instructions were prepared, indicating that a deed was to be signed by "Donald and Rosemary Galbraith, husband and wife as joint tenants." The escrow provision relating to payment, however, provided that there would be executed by the buyer a deed of trust and a promissory note in the amount of $142,000.00 "in favor of Donald B. Galbraith." Rather than preparing a note "in favor of Donald B. Galbraith," the title company prepared a deed of trust and a note for $142,000.00 payable to "Donald B. Galbraith and Rosemary E. Galbraith, husband and wife as joint tenants." The record is not clear as to why the note was made out in a manner contrary to the escrow instructions. There is no indication that Donald Galbraith consented to the variance. To the contrary, he persistently maintained that the sale was of his separate property; and approximately 90 days after the escrow concluded he filed suit to quiet title to the property as his sole and separate property. This suit was resolved by the parties entering into a stipulation that the subject real property "was the sole and separate property" of Donald Galbraith. On the same day as the stipulation was signed a judgment was entered declaring the property to be the separate property of Donald Galbraith. It is true that the stipulation was signed after the escrow was in operation so that Donald Galbraith's stipulated and declared separate property interest had to relate to the proceeds of the property rather than to the title; still, as of the date of the parties' stipulation and the judgment, on July 22, 1981, it is quite clear that Donald Galbraith's interest in the property, whatever it might be, was and was intended by both parties to be his, sole and separate, rather than joint or community property.

The evidence in this case is anything but clear. It does not clearly appear, for example, that Rosemary Galbraith at anytime after stipulating to the separate nature of the property ever claimed to be a joint tenant. Supplemental escrow instructions dated February 22, 1980, authorizing Consolidated Mortgage Company to collect the $142,000.00 note were signed by Donald Galbraith alone. Supplemental escrow instructions dated March 5, 1980, signed by both Galbraiths authorized the title company to "deposit all proceeds" into Nevada Savings and Loan Association Account Number 1700984-6, Mr. Galbraith's sole account. These factors tend to favor a conclusion that the position of the executrix may be stronger than that of the respondents.

Considering the above evidence it is very difficult to conclude, as did the trial judge, that as a matter of law the plaintiff failed to prove a *prima facie* case for reformation, that is that there was no sufficient evidence from which it could have been reasonably

concluded that the parties intended the proceeds of the sale to remain the sole and separate property of Donald Galbraith. For this reason we reverse the judgment and remand the matter for trial.